1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10   CHRISTOPHER STEVEN BUTLER,              Civil No.    06-cv-1296-W (POR)

11                            Plaintiff,     **REPORT AND RECOMMENDATION
                                             THAT PETITION FOR WRIT OF**
12         v.                                **HABEAS CORPUS BE DENIED**

13   L.E. SCRIBNER, Warden, et al.,

14                            Defendant.

15         Christopher Steven Butler, a state prisoner proceeding *pro se*, has filed a Petition for Writ of

16   Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his San Diego Superior Court

17   conviction on four grounds: (1) ineffective assistance of counsel; (2) violation of his right to be

18   present at his resentencing hearing; (3) violation of his due process rights by the trial court's

19   requirement that Petitioner wear a stun belt during  trial; and (4) that his sentence is contrary to the

20   United States Supreme Court's opinion in <u>Cunningham v. California</u>.  (Doc. No. 25[1] at 9-12.)

21         This Court has considered the Petition, Respondent's Answer, Petitioner's Traverse, and all

22   other supporting documents submitted by the parties. Based on the documents and the evidence

23   presented in the case, and for the reasons set forth below, this Court recommends that the Petition be

24   DENIED.

25   ///

26   ///

27   ///

28
     _____

         [1] First Amended Petition, hereafter referred to as "Petition."

# I. Background

## A.      Petitioner's Conviction

Petitioner was tried on eight counts in the Superior Court of San Diego stemming from his alleged involvement in a bank robbery.  (Lodgment 1, Vol. 4 at 721-730.)  At Petitioner's trial, the prosecution and the defense presented strikingly different versions of the events leading to these charges.  (Lodgment 9 at 5-14.) The prosecution alleged that Petitioner executed a plan to rob a bank by kidnaping a bank manager's daughter and threatening to kill her if the manager did not steal cash from the bank where she worked.  (Lodgment 9 at 4-10.) In his defense, Petitioner testified that he only aided in this robbery and that the plan was devised and carried out by the bank manager herself. (See Lodgment at 10-14.)

After hearing arguments and evidence presented by the prosecution and the defense, a jury convicted Petitioner of four of the eight counts.  (Lodgment 1, Vol. 4 at 720.) The jury was unable to come to a unanimous decision regarding the remaining four counts, with three jurors voting for acquittal.  (Id.; Lodgment 9 at 3.) These remaining four counts all involved the role of the bank manager whom Petitioner testified was involved in the planning and perpetration of the bank robbery.  (See Lodgment 1, Vol. 4 at 721, 723, 724 and 725.)

In Petitioner's appeal to the California Court of Appeal, Fourth Appellate District, Division One, the court expressed its skepticism of the defense's version of the events.  (Lodgment 9 at 3.) However, the court also presumed that three of the jurors were persuaded by the defense's story, as evident by the jurors' deadlock on four of the counts.  (Id.) In its opinion, the California Court of Appeal therefore included the facts as presented by both the prosecution and defense.

Under 28 U.S.C.A. § 2254, factual determinations by a state court are presumed correct. In Petitioner's case, the state court determinations of fact are muddled by the jury's mixed verdict. The following facts, therefore, are a summary taken from the California Court of Appeal's opinion on Petitioner's direct appeal of his conviction, containing the facts presented by both the prosecution and defense at trial.  (Lodgment 9.)

///

///

**1. Facts as Presented by the Prosecution**

In November of 2007, Petitioner disclosed a plan to rob a bank to his roommate, George Calloway. Petitioner, Petitioner's girlfriend Lisa Ramirez, and Petitioner's other roommate Christopher Huggins began purchasing equipment and preparing to carry out this plan. On November 21, 2000, Petitioner and Ramirez visited a Bank of America and met the manager of the bank, Michelle Ramskill-Estey, to discuss opening a new business account.

Later that evening, Petitioner, Ramirez, Huggins, and Petitioner's neighbor Robert Ortiz went to Estey's home, armed with guns and Ortiz's Rottweiler dog. Wearing black masks, hooded jackets, and gloves, they broke through a locked back door and held Estey and her seven-year-old daughter B. at gun point. After duct-taping Estey's hands behind her back and B.'s hands and ankles, Petitioner threatened to kill Estey and her daughter if Estey did not help steal money from the Bank of America vault. Petitioner informed Estey that the next morning, Estey would go to work strapped with dynamite. During the night, Estey's roommate Kimbra Oliver returned home, and was subsequently threatened and duct-taped.

The next morning, the men strapped fake dynamite to Estey, B., and Oliver, threatening to detonate the explosives if any of them tried any "funny business." Petitioner ordered Estey to drive to work while he hid in the back seat of her car. After Estey arrived at the Bank of America, she transferred $360,000 from the bank's vault into a gym bag. While in the vault, Estey informed her co-worker that she was involved in a hostage situation. When Estey left the bank, another employee notified the authorities.

After Petitioner and Estey left the bank with the money, Petitioner instructed Estey to exit the vehicle and told her that he would drive it to a location where she could pick it up. When Estey returned home, the other men had already left. Estey, B., and Oliver fled to a neighbor's house and called 911. Estey claimed to have recognized Petitioner's face and Ramirez's voice from their previous visits to the bank.

On November 23, 2000, Petitioner flew to Atlanta, Georgia with Ramirez and her children. Police arrested Petitioner and Ramirez when they returned to California on December 1, 2000. Police found items in Ramirez's car that the victims alleged were used in the crime, including a wool

cap with the eyes cut out, black gloves, and black nylon pants. Police also found spray paint at Calloway's house that matched the composition of the paint used on the fake dynamite.

**2. Facts as Presented by the Defense**

Petitioner testified at trial that he had met Estey in August or September of 2000, when he hired Estey to work for his photography business. According to Petitioner, after the two became intimate, Estey concocted a plan to rob the Bank of America and asked him to participate. Petitioner claims that he agreed, but that he did not think that Estey actually intended to carry out the plan.

Petitioner testified that on the evening of November 21, 2000, Estey invited him, Huggins, and Ortiz to her home, where everyone except Petitioner "ended up smoking dope" before Estey brought up the plan to rob the bank. Petitioner claims that Estey and the visitors ransacked the house and broke the back door as part of the plan.

The next morning, according to Petitioner, Estey strapped the fake dynamite to her back and went to the bank. He claims that after stealing the money, Estey divided it up amongst the participants. Petitioner also claims that his trip to Atlanta on November 23 had been planned for several months prior to the robbery, and was for the purpose of attending a custody hearing of Petitioner's son.

At trial, Petitioner presented no witnesses or corroborating evidence, other than Estey's admission of financial problems.

**3. Conviction**

A jury convicted Petitioner of four counts: Count 1, conspiracy to kidnap Estey for the purpose of robbery; Count 3, kidnaping Oliver for ransom; Count 4, kidnaping B. for ransom; and Count 6, robbery of Oliver. (Lodgment1, Vol. 4 at 726-29.) The jury deadlocked on the remaining four counts: Count 2, kidnaping Estey to commit robbery; Counts 5 and 7, robbery of Estey; and Count 8, residential burglary. (Lodgment 1, Vol. 4 at 721-25.)

The jury also found true that Petitioner had personally used a firearm and that the property loss exceeded $150,000. (Lodgment 6 at 2.) The trial court determined that Petitioner had previously suffered a federal bank robbery conviction, which qualifies as a "strike" under California's recidivist sentencing statute. (Lodgment 6 at 2.) The trial court dismissed the counts on

1   which the jury had deadlocked.  (Lodgment 1, Vol. 4 at 925.) For the remaining counts, the trial

2   court sentenced Petitioner to three consecutive life terms plus 64 years.  (Lodgment 1, Vol. 4 at 924-

3   25.)

4           **B.      Petitioner's Direct Appeal**

5           Petitioner appealed his conviction and sentence to the California Court of Appeal on three

6   grounds: (1) the trial court erred in failing to instruct the jurors on the required specific intent

7   element of conspiracy to commit kidnaping for robbery; (2) the trial court abused its discretion when

8   it required Petitioner to wear a stun belt in court, and thereby denied Petitioner's right to a fair trial;

9   and (3) the trial court violated Petitioner's Sixth Amendment right to a jury trial when it imposed an

10  upper term sentence for his conviction of Count 6 based on aggravating factors not found by the

11  jury.  (Lodgment 3; Lodgment 4.)

12          In an unpublished opinion, the California Court of Appeal, Fourth Appellate District,

13  Division One, reversed Petitioner's conviction on the count of conspiracy to commit kidnaping for

14  robbery of Estey (Count 1), based on the trial court's failure to instruct the jurors on the required

15  specific intent element of that offense.  (Lodgment 5 at 14.) The Court of Appeal rejected

16  Petitioner's contention that the trial court denied him a fair trial by requiring him to wear a stun belt,

17  finding that Petitioner waived the issue by failing to raise it.  (Lodgment 5 at 20.) Lastly, the Court

18  of Appeal granted Petitioner's claim that he was sentenced in violation of his Sixth Amendment

19  rights and remanded the matter to the trial court for resentencing on Count 6, in light of the U.S.

20  Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004)(holding that any facts

21  used to increase a defendant's sentence must be found by the jury beyond a reasonable doubt).

22  (Lodgment 5 at 22.)

23          On October 6, 2004, Petitioner filed a petition for review to the California Supreme Court

24  solely on the ground that the trial court violated Petitioner's Sixth Amendment right to a fair trial

25  when it required Petitioner to wear a stun-belt.  (Lodgment 6, Vol. 2.) On November 4, 2004, the

26  government also filed a petition for review of the Court of Appeal's decision to the California

27  Supreme Court, seeking a determination by the California Supreme Court of whether Blakely v.

28  Washington applied to the issuance of upper-term sentences under California's sentencing scheme.

(Lodgment 6, Vol. 1.)

On December 22, 2004, the California Supreme Court denied Petitioner's motion for review. (Lodgment 7.) The California Supreme Court granted the government's petition for review, but deferred further action pending the disposition of two related cases involving the Blakely issue. (Lodgment 7.)

On June 20, 2005, the California Supreme Court ruled in People v. Black that California's determinate sentencing laws did not offend the Sixth Amendment. 35 Cal.4th 1238 (2005), vacated by 127 S. Ct. 1210. On September 7, 2005, the California Supreme Court remanded Petitioner's case to the California Court of Appeal with directions to vacate its decision and reconsider Petitioner's sentence in light of the decision in Black. (Lodgment 8.) On November 4, 2005, the California Court of Appeal filed a new opinion in Petitioner's case, maintaining its previous reversal of the Count 1 conviction and its previous rejection of Petitioner's claim regarding his wearing a stun belt at trial, while finding that the trial court's imposition of an upper-term sentence on Count 6 did not violate Petitioner's Sixth Amendment right. (Lodgment 9.) The Court of Appeal remanded the matter to the trial court for resentencing based on its reversal of the Count 1 conviction. (Id. at 25.) Petitioner immediately filed a petition for review of that decision, again challenging his sentence in light of Blakely v. Washington. (Lodgment 10.) The California Supreme Court denied that petition on January 20, 2006 without comment. (Lodgment 11.)

Prior to the California Supreme Court's denial of Petitioner's petition for review, the California Superior Court held a hearing on December 16, 2005, to resentence Petitioner on Count 1. (Petition, Exh. B.) Petitioner was not present at that hearing. The Superior Court reversed Petitioner's sentence for Count 1 and confirmed the sentences for the remaining counts.[2]

## C.     Petitions for State Habeas Corpus Relief

Following the exhaustion of his direct appeals, Petitioner collaterally attacked his new sentence through a series of state habeas petitions.

On June 29, 2006, Petitioner filed a petition for writ of habeas corpus in the Superior Court of San Diego challenging the procedure by which he was resentenced. (Lodgment 12.) Petitioner

---

[2] As a result of the Superior Court's reversal of Count 1, Plaintiff's new sentence consisted of two consecutive life sentences, plus 52 years. (Lodgment 15 at 1.)

asserted claims of ineffective assistance of counsel based on his trial counsel's waiver of Petitioner's

claimed right to be present at the resentencing hearing, counsel's failure to notify Petitioner of his

resentencing hearing, counsel's failure to inform Petitioner of his right to appeal his new sentence,

and counsel's failure to instruct the court that it lacked jurisdiction to resentence Petitioner.

(Lodgment 12 at 3.) Petitioner also asserted a claim that the trial court violated his right to receive

notice of, and be present at, his resentencing hearing, and also that the court failed to inform him of

his right to appeal his sentence.  (Lodgment 12 at 4.)

        On September 1, 2006, the Superior Court of San Diego denied Petitioner's petition for writ

of habeas corpus.  (Lodgment 13.) The court rejected Petitioner's claim of ineffective assistance of

counsel because Petitioner failed to show that his absence from the resentencing hearing prejudiced

the outcome of the hearing.  The court reasoned that the sentencing judge's decision was limited by

the Court of Appeal's order remanding the case, and therefore Petitioner's presence would not have

affected the proceeding.  (Lodgment 13 at 2.) The court also rejected Petitioner's claim that the

sentencing court had itself violated his rights to be present at his resentencing and to appeal the

outcome, again based on the court's limited discretion at the hearing. (Lodgment 13 at 2-3.)  The

trial court had removed one life term from Petitioner's sentence, but Petitioner was continuing to

serve concurrent life sentences on those convictions which had not been reversed.  (Id.)  Since the

convictions on which he was resentenced had previously been affirmed, the court found that

Petitioner lacked a basis on which to appeal the resentencing decision and was thus not entitled to

habeas corpus relief.  (Id. at 3.)

        On October 2, 2006, Petitioner filed a second state petition for writ of habeas corpus in the

California Court of Appeal, Fourth Appellate District, Division One. (Lodgment 14.) In his second

state petition, Petitioner asserted a claim for ineffective assistance of counsel based on counsel's

failure to notify Petitioner about his resentencing hearing and counsel's waiver of Petitioner's right

to be present at this proceeding.  (Lodgment 14 at 3.) Petitioner also claimed that the trial court

violated his right to due process by conducting Petitioner's resentencing hearing in his absence.

(Lodgment 14 at 3.)

        On January 24, 2007, the California Court of Appeal, Fourth Appellate District, Division

One denied Petitioner's petition.  (Lodgment 15.) The Court of Appeal rejected Petitioner's claim of

ineffective assistance of counsel.  (Lodgment 15 at 1.) Although the Court of Appeal found that Petitioner's absence from the resentencing hearing was confirmed by a minute order resulting from the proceeding, the Court of Appeal held that the minute order did not support Petitioner's claim that his absence was due to a waiver of appearance by counsel. (Id.) The Court of Appeal also rejected Petitioner's due process claim, holding that a defendant has a due process right to be present at proceedings only when the defendant's presence would have a "relation, reasonably substantial" to the defendant's opportunity to defend himself.  (Lodgment 15 at 2)(citing People v. Ochoa, 26 Cal.4th 398, 433 (2001)). Because the trial court had only limited jurisdiction to modify Petitioner's sentence as instructed by the Court of Appeal, the court found that Petitioner's presence would not have had an effect on the resentencing proceeding.  (Lodgment 15 at 2.)

On February 9, 2007, Petitioner filed a third state petition for writ of habeas corpus, to the California Supreme Court.  (Lodgment 16.) Petitioner asserted the same claims of ineffective assistance of counsel for counsel's failure to notify Petitioner about his resentencing hearing and for waiving Petitioner's appearance at the proceeding. (Lodgment 16 at 3.) Petitioner also asserted the claim that the trial court violated his right to due process by conducting the hearing in Petitioner's absence.  (Lodgment 16 at 4.) On July 11, 2007, the California Supreme Court denied the petition without comment.  (Lodgment 17.)

### D.   Petition for Federal Habeas Corpus Relief

Petitioner filed a federal petition for writ of habeas corpus to this Court on June 20, 2006. (Doc. No. 1.) That petition sought relief on two grounds: (1) that the trial court violated his right to due process by requiring him to wear a stun belt during his trial; and (2) that the trial court violated his Sixth Amendment right to a trial by jury when it sentenced him to the upper term sentence on Count 6 and consecutive terms, based on findings not made by the jury.  (Doc. No. 1 at 8-9.) On November 3, 2006, Petitioner filed a motion for stay and abeyance in order to exhaust his claims in state court.  (Doc. No. 15.) On January 31, 2007, Petitioner's motion for stay and abeyance was granted.  (Doc. No. 21.)

Petitioner filed his First Amended Petition on September 14, 2007.  (Doc. No. 25.) The First Amended Petition seeks relief on four grounds: (1) ineffective assistance of counsel for counsel's waiver of Petitioner's right to be present at his resentencing hearing; (2) violation of his due process

rights by the trial court's waiver of Petitioner's right to be present at his resentencing hearing; (3) violation of his due process rights by the trial court's requirement that Petitioner wear a stun belt during the trial; and (4) the recent United States Supreme Court opinion in <u>Cunningham v. California</u> invalidated his sentence for Count 6.  (Petition at 9-12.) On January 25, 2008, Respondent filed an answer to the petition, alleging that Petitioner has failed to state a claim that the state court's resolution of his claims was unreasonable under AEDPA, that the state courts reasonably concluded that Petitioner was not denied his right to effective counsel or due process, and that the state courts reasonably concluded that Petitioner's sentencing was proper in light of <u>Blakely</u> and <u>Cunningham</u>. (Doc. No. 31 at 12, 15, 19.) Petitioner filed a traverse to Respondent's answer on March 10, 2008. (Doc. No. 33.)

## II. Standard of Review

Title 28 U.S.C. section 2254(a), allows for federal review of "the judgment of a State court only on the ground that [a habeas petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a) (2008).  28 U.S.C. section 2254(d) reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2008).

In addition to the limitation of federal court review to "violation[s] of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), the United States Supreme Court has also instructed that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).

Federal habeas review is available to assess the constitutionality of a judgment of a state court.  Where there is no reasoned decision from the state's highest court to review, a federal court "looks through" the silent state court decision to the "last reasoned opinion" issued in the state's courts.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803, 805 (1991).

///

### III. Discussion

Petitioner raises four grounds for relief in his federal petition: (1) ineffective assistance of counsel for counsel's waiver of Petitioner's right to be present at his resentencing hearing; (2) violation of his due process rights by the trial court's waiver of Petitioner's right to be present at his resentencing hearing; (3) violation of his due process rights by the trial court's requirement that Petitioner wear a stun belt during the trial; and (4) the recent United States Supreme Court opinion in Cunningham v. California invalidated his upper-term sentence. (Petition at 9-12.)

### A.      Ground One - Ineffective Assistance of Counsel

Petitioner asserts that his Fifth, Sixth, and Fourteenth Amendment rights were violated when his trial counsel waived Petitioner's right to be present at his resentencing hearing.  (Petition at 9.) Petitioner claims that he was not informed that this hearing had occurred until months afterward, and thus his right to be present was waived without his consent.  (Petition at 9.) At the resentencing hearing, the trial court reversed the conviction for Count 1. Because the trial court was acting to "correct" a sentence on remand from the California Court of Appeal, rather than simply reducing a sentence, Petitioner argues that he had the right to be present.  (Petition at 9.)

Respondent counters that Petitioner has failed to show that his presence at the resentencing hearing would have impacted the outcome of the proceedings, and therefore the state court's adjudication of this claim is entitled to deference by this Court.  (Doc. No. 31, Part 2 at 16.) In his traverse, Petitioner claims that his presence *would* have affected the outcome of the proceeding because he would have "requested to see the remitture [sic]," which was not issued until after the hearing.  (Doc. No. 33 at 11.) Petitioner claims that the trial court therefore "did not have 'legal jurisdiction' to resentence" him.  Id.

The clearly established law regarding ineffective assistance of counsel claims is dictated by the United States Supreme Court opinion in Strickland v. Washington, 466 U.S. 668 (1984); Jones v. Wood, 114 F.3d 1002, 1013 (9th Cir. 1997). To establish a cognizable claim for ineffective assistance of counsel, a petitioner must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

Under the <u>Strickland</u> standard, a petitioner must show that his counsel's performance fell "outside the wide range of professional competence," and was, in fact, deficient. <u>Strickland</u>, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Id.</u>; <u>Galavan v. Alaska Dept. of Corrections</u>, 397 F.3d 1198, 1203 (9th Cir. 2005). Additionally, a petitioner must show that counsel's deficient performance prejudiced his defense. <u>Strickland</u>, 466 U.S. at 668. Prejudice is established if there is a reasonable probability that a more favorable outcome would have resulted but for the deficient performance by counsel. <u>Id.</u> at 694. A petitioner must demonstrate that both of these elements are satisfied, and therefore a court may reject a petitioner's claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. <u>Id.</u>

The "last reasoned opinion" regarding this issue was the opinion issued by the California Court of Appeal on January 24, 2007, in its denial of Petitioner's second state petition for writ of habeas corpus. <u>See</u>, <u>Ylst</u>, 501 U.S. at 803, 805. In its opinion, the Court of Appeal states that, although Petitioner was not present at this hearing, the record of the hearing does not indicate that counsel waived his presence. (Lodgment 15 at 1.) In his petition to this Court, however, Petitioner includes a letter drafted by the presiding Superior Court judge informing Petitioner of counsel's waiver of his presence at the resentencing hearing. (Petition, Exhibit B.) Because the Court of Appeal rejected Petitioner's ineffective assistance of counsel claim based on a finding that Petitioner's presence was not waived, the court did not apply a <u>Strickland</u> analysis to Petitioner's claim. (Lodgment 15 at 1.) This Court assesses Petitioner's claim according to <u>Strickland</u> to determine whether the Court of Appeal's decision was unreasonable. Petitioner must show that counsel's waiver of Petitioner's right to be at his resentencing hearing was conduct outside "professional competence" and also that counsel's waiver of Petitioner's presence resulted in actual prejudice. <u>Strickland</u>, 466 U.S. at 694.

Petitioner contends that his trial counsel rendered ineffective assistance by failing to inform him of his resentencing hearing, thereby  waiving his presence at this proceeding. (Petition at 9.) Petitioner does not specifically allege how his counsel's representation in this regard was unreasonable, nor how it prejudiced his defense. The California Court of Appeal's remand of

1    Petitioner's case to the trial court gave the trial court only the limited jurisdiction to modify

2    Petitioner's sentence based on its instructions.  (Lodgment 9 at 25.) This Court does not find

3    counsel's waiver of Petitioner's presence at that proceeding to be performance outside the wide

4    range of professional competence, because Petitioner's presence would have had no effect on the

5    outcome. Furthermore, even if counsel's conduct had been outside the range of professional conduct,

6    Petitioner suffered no prejudice as a result of his counsel's actions, because the trial court had only

7    the limited jurisdiction to modify Petitioner's sentence based on its instructions. The Court of

8    Appeal's denial of Petitioner's claim of ineffective assistance was not contrary to clearly established

9    federal law.

10           **B.      Ground Two - Violation of Right to Be Present**

11           Petitioner claims that the trial court violated his right to due process as guaranteed by the

12   Fifth, Sixth, and Fourteenth Amendments based on the same factual allegations as stated in

13   Petitioner's first claim.  (Petition at 10.)

14           Respondent argues that, because the trial court only had the jurisdiction to enter the sentence

15   correction as directed by the Court of Appeal, Petitioner's presence at the resentencing hearing

16   would have had no effect on the outcome of the proceedings.  (Doc. No. 31, Part 2 at 16.) Therefore,

17   Respondent argues, the state courts reasonably rejected this claim. Id. Petitioner counters in his

18   traverse that his presence at the proceeding would have affected the outcome because he would have

19   pointed out the court's lack of proper jurisdiction to resentence him.  (Doc. No. 33 at 11.)

20           The United States Supreme Court has recognized that a defendant has a "guaranteed right to

21   be present at any stage of the criminal proceeding that is critical to its outcome if his presence would

22   contribute to the fairness of the procedure."  Kentucky v. Stincer, 482 U.S. 730, 745 (1987). The

23   defendant's presence must relate to his opportunity to defend himself, and this relationship must be

24   "reasonably substantial."  Id. (citing Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934)). A

25   criminal defendant's right to be present is therefore not absolute, but is rather "a condition of due

26   process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent

27   only." United States v. Gagnon, 470 U.S. 522, 526 (1985)(citing Snyder, 470 U.S. at 105-06, 108.)

28   See also, Hovey v. Ayers, 458 F.3d 892, 902 (9th Cir. 2006)(holding that a criminal defendant's due

1  process right to be present exists only when the defendant's absence might "frustrate the fairness of

2  the proceedings"; Campbell v. Rice, 408 F.3d 1166, 1171 (9th Cir. 2005)(holding that a defendant's

3  right to be present exists when it would contribute to the fairness of the procedure); United States v.

4  Veatch, 674 F.2d 1217, 1225 (9th Cir. 1981)(holding that a defendant's right to be present is

5  dependent on whether the defendant's absence would be potentially harmful).

6      The "last reasoned opinion" regarding this issue was the opinion issued by the California

7  Court of Appeal, in its denial of Petitioner's second state petition for writ of habeas corpus.  See,

8  Ylst, 501 U.S. at 803, 805. In considering this due process claim in Petitioner's state habeas petition,

9  the California Court of Appeal applied clearly established federal law. (Lodgment 15 at 2.) The

10  Court of Appeal applied the standard set forth in Kentucky v. Stincer for when a defendant has a due

11  process right to be present at a proceeding.  (Lodgment 15 at 2.)

12      The Court of Appeal reasoned that because the trial court had only the limited jurisdiction to

13  follow the directions of the appellate court, Petitioner's presence "would have added nothing" to the

14  outcome of the resentencing hearing.  (Lodgment 15 at 2.) During Petitioner's direct appeal, the

15  California Court of Appeal had remanded Petitioner's case to the trial court based solely on a

16  reversal of Count 1.  (Lodgment 9 at 25.) At the resentencing hearing, the trial court only had

17  jurisdiction to modify Petitioner's sentence based on the Court of Appeal's instructions. Given the

18  trial court's limited jurisdiction, Petitioner's presence could not have affected the trial court's

19  resentencing.[3] The Court of Appeal's denial of Petitioner's claim of due process violation was not an

20  unreasonable application of clearly established Supreme Court law.

21  **C.      Ground Three - Violation of Right to Fair Trial**

22      In Petitioner's third claim, he asserts that he was denied the right to a fair trial when he was

23  forced to wear a stun belt during his trial.  (Petition at 11.) Petitioner claims that the trial court

24  abused its discretion when it allowed the bailiff to authorize the use of a stun belt without a court

25

26          [3] In his petition, Petitioner does not allege how his presence at the hearing would have had any
    relation to his opportunity to defend against the charges. However, in his traverse, Petitioner argues that
27  his presence would have contributed to his opportunity to defend against the charge, because he would
    have pointed out the court's lack of jurisdiction to resentence him.  (Doc. No. 33 at 12.) This argument
28  asserts a violation of California's criminal procedural law. "In conducting habeas review, a federal court
    is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United
    States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Accordingly, this Court lacks jurisdiction to review
    the state trial court's application of its criminal procedural laws.

06cv1296

1   order.  (Petition at 11.) Additionally, Petitioner argues that the trial court denied him the effective

2   assistance of counsel and violated Rule 43(a) of the Federal Rules of Criminal Procedure by

3   allowing counsel and the district attorney to confer in private chambers without Petitioner's

4   presence.  (Petition at 8.) Petitioner therefore claims that he was denied a fair trial, which was

5   especially detrimental to Petitioner given the closeness of the case against him.  (Petition at 11.)

6        Respondent counters that this claim fails to raise a federal claim and thus Petitioner does not

7   have a valid basis to bring this claim in a federal petition.  (Doc. No. 31, Part 2 at 17.) Although

8   Petitioner makes a general federal claim, a state claim wrapped in the guise of a due process

9   allegation is insufficient to invoke federal relief.  (Doc. No. 31, Part 2 at 17.) Respondent also argues

10  that, even if this state claim were to be interpreted as a federal issue, the state courts reasonably

11  rejected this claim because Petitioner had not raised the issue in an objection and, additionally,

12  suffered no prejudice as a result of wearing the stun belt.  (Doc. No. 31, Part 2 at 18.)

13       In his reply, Petitioner argues that this claim raises a federal question because his claim

14  relates to a "close case" and an alleged violation of a Federal Rule of Criminal Procedure.  (Doc. No.

15  33 at  13.) Petitioner further alleges that he did suffer prejudice as a result of the stun belt

16  requirement, as evident by the jury deliberations and the apprehension he suffered while wearing the

17  device.  (Doc. No. 33 at 13.)

18       While in custody, Petitioner attempted to escape from the Vista Jail.  (Lodgment 2, Vol. 8 at

19  27.) Prior to trial, the judge discussed with the prosecution, defense counsel and the courtroom

20  bailiff, the security concerns that she had in considering the number of defendants that would be on

21  trial.  (Lodgment 1, Vol. 4 at 830.)  The trial judge expressed her concern that leg chains on

22  Petitioner would be easily visible to the jury, even if curtains were placed around the defendants'

23  tables.  (Lodgment 1, Vol. 4 at 830.) The court also weighed the impracticality of leg chains, due to

24  the requirement that the defendants be separated from each other during the trial.  (Lodgment 1, Vol.

25  4 at 832.) The court also considered adding more deputies in the courtroom, but concluded that the

26  added security might cause concern to the jurors.  (Lodgment 1, Vol. 4 at 832.) Addressing the

27  option of a stun belt, the judge referred to it as a "good alternative" due to its concealment from the

28  jury.  (Lodgment 1, Vol. 4 at 833.) The judge requested that Petitioner's counsel and counsel for the

1    state consider and discuss the possible alternatives.  (Lodgment 1, Vol. 4 at 833.)

2        After extensive discussion in chambers, the judge decided on the use of a stun belt.

3    (Lodgment 2, Vol. 23 at 2261.) Prior to wearing the belt, Petitioner signed a notification and

4    acknowledgment form, which warned that the belt could be activated if Petitioner engaged in several

5    forms of behavior, including sudden movements, hostile or rebellious conduct, or hiding his hands

6    from the controller of the stun belt.  (Lodgment 1, Vol. 4 at 837.)  The form also included several of

7    the potential consequences from activation of the belt, such as immobilization of the wearer, self-

8    defecation, and self-urination.  (Lodgment 1, Vol. 4 at 837.) Petitioner was required to wear a stun

9    belt throughout his trial and testimony.  (Lodgment 1, Vol. 4 at 837.)

10        Post-trial, during Petitioner's motion for a new trial, the judge pointed out that extensive

11    discussions had taken place in chambers regarding safety precautions.  (Lodgment 2, Vol. 23 at

12    2261.) The judge specifically stated several justifications for the imposition of the stun belt,

13    including Petitioner's attempted escape, the fact that four defendants were being tried together, and

14    the severity of the sentences that the defendants were facing.  (Lodgment 2, Vol. 23 at 2261-62.)

15    Given these concerns, the judge felt that the risk was too great "to not have some additional

16    protection on him during this trial."  (Lodgment 2, Vol. 23 at 2363.) The judge also asserted that,

17    after she had made the initial determination that some safety measure was necessary, she opened up

18    discussion as to the *type* of restraint.  (Lodgment 2, Vol. 23 at 2363.) The remainder of the

19    discussions occurred in chambers, and almost all of the judge's analysis regarding her decision is not

20    on record. After the trial, however, the judge justified her choice of a stun belt based on its

21    concealment from the jury and the smaller risk of prejudice to Petitioner compared with traditional

22    shackling.  (Lodgment 2, Vol. 23 at 2364.) The judge also pointed out that neither Petitioner nor his

23    counsel had voiced any objections to the use of a stun belt, even though she had given them an

24    opportunity to do so.  (Lodgment 2, Vol. 23 at 2363-64.)

25        The last reasoned opinion regarding this issue is the second opinion issued by the California

26    Court of Appeal on November 4, 2005, during Petitioner's direct appeal of his conviction.  See, Ylst,

27    501 U.S. at 803, 805. The Court of Appeal first rejected Petitioner's claim on appeal due to his

28    failure to raise it as an objection at trial.  (Lodgment 9 at 22.) Applying California Supreme Court

1  case law, the Court of Appeal opined that Petitioner had ample opportunity to raise his concerns to

2  the trial judge; his failure to do so constituted a waiver of the issue at the appellate level. Regarding

3  the merits of Petitioner's claim, the Court of Appeal did not apply clearly established United States

4  Supreme Court law as discussed below, but rather simply pointed out that the trial court was "open-

5  minded on the issue of security and elicited the opinions of all parties regarding alternative security

6  measures." (Lodgment 9 at 22.) This Court therefore applies the clearly established standard set

7  forth by the United States Supreme Court, and further clarified by the Ninth Circuit, for when a trial

8  court is justified in imposing  a stun belt on a defendant.

9     **1. Imposition of Physical Restraints**

10     Clearly established federal law recognizes a trial court's discretion to impose physical

11  restraints on a criminal defendant.  Deck v. Missouri, 544 U.S. 622, 627 (2007); Holbrook v. Flynn,

12  475 U.S. 560 (1986); Illinois v. Allen, 397 U.S. 337 (1970). However, the use of physical restraints -

13  such as shackles -  poses potential dangers, including  prejudicing the jury, perversion of the court's

14  dignity, and an inhibition of the defendant's right to communicate with counsel.  Allen, 397 U.S. at

15  344. Thus the "inherently prejudicial" practice of physically restraining a defendant is "permitted

16  only where justified by an essential state interest specific to each trial."  Holbrook, 475 U.S. at 568-

17  69. Restraints are only allowed as a "last resort."  Allen, 397 U.S. at 344.

18     Stun belts provide an alternative safety precaution to the use of traditional shackles.

19  Gonzalez v. Pliler, 341 F.3d 897, 899 (9th Cir. 2003). A stun belt is an electrical device that is

20  placed around a defendant's waist, and is not visible to the jury. Id. The belt delivers a 50,000 volt

21  shock for eight-second increments, and can cause the defendant pain and uncontrolled urination and

22  defecation. Id. Activation of the device also presents a risk for long-term consequences, such as

23  welts, irregular heartbeats, and seizures.  Id.

24     While the United States Supreme Court has addressed the use of physical restraints that are

25  visible to the jury, it has not yet considered the use of stun belts as a precautionary measure.

26  However, the Ninth Circuit maintains that the use of stun belts, though hidden from the jurors' eyes,

27  pose the same risks as traditional shackles.  Gonzalez, 341 F.3d at 900-01 (9th Cir. 2003).

28  Additionally, stun belts pose a potentially more severe effect than shackles on a defendant's ability

to

1  confer with counsel, assist in his own defense, and maintain composure to the jury. Id. The Ninth

2  Circuit therefore imposes the same constitutional standard for the use of stun belts as is required for

3  the use of other physical restraints.  Id. at 902.

4      The Ninth Circuit identifies that a trial court judge has the "grave responsibility" of

5  maintaining the safety of all persons in the courtroom and, if the defendant poses a flight risk, the

6  general community.  Morgan v. Bunnell, 24 F.3d 49, 51 (9th Cir. 1994). Accordingly, a trial court

7  judge has wide discretion in determining whether physical restraints on a defendant are necessary.

8  Id.

9      The Ninth Circuit has adopted a two-part inquiry to determine whether a trial judge has

10  abused this discretion, based on clearly established law as set forth by the United States Supreme

11  Court in Holbrook and Allen.  United States v. Fernandez, 388 F.3d 1199, 1245 (9th Cir. 2004);

12  Jones v. Meyer, 899 F.2d 883, 885 (9th Cir. 1990)(citing Spain v. Rushen, 883 F.2d 712, 721-22

13  (9th Cir. 1989)). First, physical restraints are "justified by an essential state interest" if the trial court

14  was "persuaded by compelling circumstances that some measure was needed to maintain the security

15  of the courtroom." Holbrook, 475 U.S. at 5868-69; Fernandez, 388 F.3d at 1245.  Second, restraints

16  are used as a "last resort" if the trial court "pursue[s] less restrictive alternatives before imposing

17  physical restraints."  Allen, 397 U.S. at 344; Fernandez, 388 F.3d at 1245. This individualized

18  determination must be made prior to the use of physical restraints on a defendant; a subsequent

19  analysis does not preserve the defendant's due process rights.  Larson v. Palmateer, 515 F.3d 1057,

20  1063 (9th Cir. 2008).

21              **a. Compelling Circumstances**

22      Restraints may only be imposed when "justified by an essential state interest."  Holbrook,

23  475 U.S. at 568-69. In making this determination, a trial judge may consider safety concerns,

24  including  protection of the judge and others in the courtroom.  Deck, 544 U.S. at 632. If a defendant

25  poses a flight risk, then the court must also consider the safety of the general public.  Morgan, 24

26  F.3d at 51. The Ninth Circuit recognizes that a defendant's threat of escape and a defendant's

27  propensity for violence are both compelling reasons.  Id.

28      Here, Petitioner attempted to escape from custody while awaiting trial.  (Lodgment 2, Vol. 8

   at 27.) The trial judge expressed her safety concerns regarding Petitioner's attempted escape, the

number of defendants on trial, and the severity of the sentences that the defendants were facing. (Lodgment 1, Vol. 4 at 830; Lodgment 2, Vol. 23 at 2261-62.) As held by the Ninth Circuit, Petitioner's attempted escape alone is a compelling reason to impose restraints. See Morgan, 24 F.3d at 51. Furthermore, the severity of the sentence which Petitioner faced made him a further risk of flight.

Given Petitioner's attempted escape and the trial judge's discussions before the trial on the record and in chambers, the trial court had compelling circumstances for the imposition of physical restraints.

### b. Less Restrictive Alternatives

Restraints may only be used as a "last resort." Allen, 397 U.S. at 344. The trial court must consider less restrictive alternatives before imposing the use of physical restraints, so as to minimize the risk of prejudicing the jury, impairment of the defendant's mental facilities and communication abilities, and detraction from the judicial decorum of the proceedings. Morgan, 24 F.3d at 51. Unlike shackles, the concealed nature of stun belts poses a smaller risk of prejudicing the jury. However, given the intensity of the electrical charge, stun belts potentially pose a more severe risk to a defendant's ability to confer with counsel and assist in his own defense. Gonzalez, 341 F.3d at 900. The Ninth Circuit has considered  stun belts as a "less restrictive means of restraint" than traditional shackles.  United States v. Collins, 109 F.3d 1413, 1418 (9th Cir. 1997).

Before Petitioner's trial, the judge discussed possible safety options with Petitioner's counsel, counsel for the state, and the courtroom bailiff.  (Lodgment 1, Vol. 4 at 830-34.) The judge considered the benefits and disadvantages of various safety measures, including requiring the defendants to wear leg chains, stun belts, and increasing the number of courtroom deputies. (Lodgment 1, Vol. 4 at 830, 833.) The visibility of leg chains to the jury, and the resulting risk of prejudice, was one of the judge's major concerns.  (Lodgment 1, Vol. 4 at 830.) The judge's ultimate decision was to require Petitioner to wear a stun belt.  (Lodgment 1, Vol. 4 at 837.) However, as previously noted, the judge's detailed discussions regarding this decision occurred in chambers and off the record.  (Lodgment 2, Vol. 23 at 2261.)

///

Though the majority of the analysis occurred off the record, the judge did pursue alternatives to a stun belt. She clearly expressed her concern for the potential for prejudicing the jury by the imposition of visible restraints, and also their impracticality due to the multiple defendants and the layout of the courtroom. (Lodgment 1, Vol. 4 at 830-34.) Additionally, the judge dismissed the idea of additional courtroom deputies due to possible "juror concerns."  (Lodgment 1, Vol. 4 at 830.)

Accordingly, the trial court conducted a sufficient analysis to require Petitioner to wear a stun belt because the requirement was "justified by an essential state interest" and imposed as a "last resort." The Court of Appeal's rejection of this claim was not contrary to clearly established law.

### c. Actual Prejudice

Clearly established law recognizes a per se constitutional violation when a defendant is required to wear restraints without adequate justification.  Holbrook, 475 U.S. at 568-69. However, for many constitutional violations, the petitioner must also prove that he suffered actual prejudice to receive federal habeas relief.  Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993). For a violation based on an unjustified use of physical restraints, the Ninth Circuit has imposed this showing of actual prejudice.  See, Gonzales, 341 F.3d at 902-03 (applying the Brecht standard to a court's unjustified imposition of a stun belt on a defendant); Duckett v. Godinez, 67 F.3d 734, 249 (9th Cir. 1995) (applying the Brecht standard to a court's unjustified imposition of shackles on a defendant). "Actual prejudice" occurs when the error had "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 623 (citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Though this Court recommends finding that there was no constitutional error in Petitioner's case, the Court proceeds to examine whether Petitioner suffered actual prejudice as a result of the trial court's determination to impose a stun belt.

In addressing this issue, the California Court of Appeal applied this standard and found that Petitioner had not suffered actual prejudice as a result of the stun belt.  (Lodgment 9 at 22.) The court relied on the trial court's dismissal of Petitioner's motion for a new trial, where the trial judge claimed that Petitioner had been "as conversational and low key as any defendant that I have ever seen as a lawyer or a judge" towards the jury.  Id. The trial judge did not find any evidence that Petitioner's ability to communicate with counsel or the jury was impaired as a result of the belt.  Id.

06cv1296

The Court of Appeal also noted that three jurors were even persuaded by Petitioner's testimony.  Id.

The sight of the stun belt itself could not have had a "substantial and injurious effect" on the jurors' verdict, because the existence of the belt was concealed from the jury.  (Lodgment 1, Vol. 4 at 833; Lodgment 2, Vol. 23 at 2364.)  However, if the belt affected Petitioner's communication abilities with his counsel and during his testimony to the jury, then the stun belt could have had a prejudicial effect. But both the trial judge and the Court of Appeal found that Petitioner was unaffected by the belt and suffered no prejudice as a result. (Lodgment 2, Vol. 23 at 2366; Lodgment 9 at 22.) During Petitioner's motion for a new trial, the trial judge stated that Petitioner had not suffered any prejudice from the stun belt. Specifically, the judge asserted that Petitioner had been well-informed about the use of a stun belt, was able to testify for a day and a half, and gave a detailed description of his involvement with the victims.  (Lodgment 2, Vol. 23 at 2365-66.) The judge also noted that during Petitioner's testimony, he "smiled," "engaged the jury," and was "conversational" and "low key."  Id. His testimony was "one of the best" the judge had seen in her twelve and a half years on the bench.  (Lodgment 2, Vol. 23 at 2365.)

Upon reading the transcript of Petitioner's testimony, he indeed seems unaffected by his wearing of a stun belt.  (See, Lodgment 2, Vol. 19 at 1536-1667.) Petitioner did not present any corroborating evidence or witnesses; therefore, his entire case rested on his testimony. His testimony stretches for over 131 pages of transcript. He gave lengthy and detailed responses during both direct and cross examination. While the trial transcript cannot convey Petitioner's demeanor during his testimony, the trial judge's description and the jury verdict give some insight as to Petitioner's ability to testify. The trial judge commended Petitioner's ability to testify and, as pointed out by the California Court of Appeal, some jurors were even "swayed by [Petitioner's] testimony." (Lodgment 9 at 22.) Based on the reaction of those who witnessed Petitioner's testimony, the judge and jury, Petitioner does not appear to have been prejudiced by the stun belt.

Applying the Brecht standard, the California Court of Appeal found that the stun belt did not have a "substantial and injurious effect" on the jury's verdict by interfering with Petitioner's ability to testify. The Court of Appeal's determination that Petitioner suffered no actual prejudice was not unreasonable.

1    The Court of Appeal's rejection of Petitioner's claim that he was denied the right to a fair

2    trial when he was forced to wear a stun belt during his trial, was not contrary to clearly established

3    law and Petitioner is not entitled to federal habeas relief on this ground.

4        **2. Exclusion from Conference in Chambers**

5        Petitioner also asserts that the trial court denied him effective assistance of counsel and the

6    right to be present in chambers during the conferences among the judge, district attorney, and

7    Petitioner's counsel regarding the imposition of safety restraints.[4]  (Petition at 11.)

8        As already discussed above, a defendant's right to be present is not absolute, but rather exists

9    only where "his presence would contribute to the fairness of the procedure." <u>Kentucky v. Stincer</u>,

10   482 U.S. 730, 745 (1987). Even if a petitioner is able to show a violation of his constitutional right

11   to be present, the petitioner must also show that the violation resulted in actual prejudice, such that it

12   "had substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht</u>, 507

13   U.S. at 623.

14       Petitioner was not present during in-chambers discussions regarding safety considerations.

15   (Petition at 8; Lodgment 2, Vol. 23 at 2261.) Prior to trial, the judge had already determined that

16   some extra safety precautions would be necessary during Petitioner's trial. (Lodgment 1, Vol. 4 at

17   830-34; Lodgment 2, Vol. 23 at 2363.) The judge's justifications were Petitioner's attempted escape

18   from custody, the number of defendants on trial, and the severity of the sentences that the defendants

19   faced. (Lodgment 2, Vol. 23 at 2261-62.) The only remaining decision involved which safety

20   measure would be the best alternative.

21       Prior to trial, the judge discussed her security concerns in open court.  (Lodgment 1, Vol. 4 at

22   830.) The judge requested that Petitioner's counsel and counsel for the state consider and discuss the

23   possible safety precautions.  (Lodgment 1, Vol. 4 at 833.) The trial judge thus gave Petitioner a

24   chance to voice his concerns about wearing a stun belt, but neither Petitioner nor his counsel

25   objected.  (Lodgment 2, Vol. 23 at 2364.) Based on this failure to object and the trial judge's

26   _____

27   [4] Petitioner further alleges that these private chambers sessions violated Rule 43(a) of the Federal
     Rules of Criminal Procedure, because the sessions pertained to part of the trial.  (Petition at 11.)
28   However, Petitioner's trial occurred in California state courts, and thus the Federal Rules of Criminal
     Procedure do not apply.  <u>See</u> Fed.Rules Crim.Proc. rule 1(a)(1), 18 U.S.C.A. (2008)("These rules govern
     the procedure in all criminal proceedings in the United States district courts, the United States courts
     of appeals, and the Supreme Court of the United States.")

1  justifications for the necessity of the restraint, Petitioner's presence at the in-chambers session

2  would likely not have contributed to the fairness of the procedure.

3      Even if Petitioner's absence from these in-chambers discussions violated Petitioner's

4  constitutional right to be present, this error would be harmless under the <u>Brecht</u> analysis. As

5  discussed above, the trial judge had already determined to impose some form of extra safety

6  precaution.[5] (Lodgment 1, Vol. 4 at 830-34.) The judge addressed the risks associated with

7  alternative safety measures prior to the counsels' in-chambers conferences.  (Lodgment 1, Vol. 4 at

8  830-34.) Her choice of a stun belt reflected her concern that Petitioner receive a fair trial, without the

9  potential prejudice from shackles visible to the jury.  (Lodgment 2, Vol. 23 at 2364.) The judge

10  decided on the safety option that was in Petitioner's best interest.  Applying the <u>Brecht</u> standard,

11  Petitioner's absence from these discussions did not have a "substantial or injurious effect" and any

12  error would therefore be harmless.

13      Petitioner's absence from these in-chambers conferences does not constitute a federal due

14  process violation and is not a ground for federal habeas relief.

15      **D.      Ground Four - Sentence was Improper**

16      Petitioner's final claim is that he is entitled to a sentence reduction in light of the recent

17  United States Supreme Court decision in <u>Cunningham v. California</u>, 127 S.Ct. 856 (2007). (Petition

18  at 12.) Additionally, he asserts that the trial court erred in imposing a high-term sentence and

19  consecutive sentences for the same aggravating factor, in violation of California Penal Code §

20  12022.53(F).  (Petition at 12.)

21      Respondent argues that Petitioner was sentenced prior to the decision in <u>Cunningham</u>, and

22  that this decision does not apply retroactively to Petitioner's case. Respondent further argues that,

23  even if <u>Cunningham</u> did apply retroactively to Petitioner's case, Petitioner's sentence presents no

24  <u>Cunningham</u> violation because the upper-term sentence was based on a prior conviction. Finally,

25  Respondent claims that even if a <u>Cunningham</u> violation occurred, it was harmless error.  (Doc. No.

26  31, Part 2 at 19-21.)

27  ///

28
_____
[5] This Court has already determined that the trial judge's decision to impose physical restraints did not violate Petitioner's constitutional rights. Refer to pages 16-19.

### 1. Sentence in Light of <u>Cunningham</u>

The last reasoned state court opinion regarding this issue is the decision issued by the California Court of Appeal on November 4, 2005, during Petitioner's direct appeal of his conviction. (Lodgment 9.)  <u>See</u>, <u>Ylst</u>, 501 U.S. at 803, 805. In its opinion, the court relied on the California Supreme Court's decision in <u>People v. Black</u>, which held that "[the] judicial factfinding that occurs when a judge exercises discretion to impose an upper term . . . or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury."  (Lodgment 9 at 24)(quoting <u>People v. Black</u>, 35 Cal.4th 1238, 1244 (2005). The court referenced the aggravating factors that the trial court had relied on in imposing an upper term and consecutive sentences, which included "a high degree of cruelty, the use of a handgun, the taking of items with significant monetary value, the degree of planning and sophistication, numerous prior convictions, a prior prison sentence and poor performance on previous probation."  (Lodgment 9 at 23-24.) The court held that Petitioner's right to a jury trial had not been violated by the court's imposition of an upper term because an upper term is the "statutory maximum" allowed under California's determinate sentencing law. Citing <u>Black</u>, the court also found that a court may impose consecutive sentences without a factual finding by a jury.  (Lodgment 9 at 24)("When a judge considers the circumstances of each offense and the defendant's criminal history in determining whether the sentences are to be served concurrently or consecutively, he or she cannot be said to have usurped the jury's historical role."  <u>Black</u>, 35 Cal.4th at 1263.)

Abrogating the decision in <u>People v. Black</u>, the United States Supreme Court declared in <u>Cunningham v. California</u> that California's determinate sentencing laws violate a defendant's Sixth Amendment right to a trial by jury to the extent that they permit a judge to impose an upper term sentence based on facts not found by a jury beyond a reasonable doubt or admitted to by a defendant. 127 S.Ct. 856, 868 (2007). The court held that "except for a prior conviction, 'any fact that increases the penalty for a crime beyond the proscribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt.'" <u>Id.</u> at 864 (quoting <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000)). The court in <u>Cunningham</u> also held that, contrary to the California Supreme Court's interpretation in <u>People v. Black</u>, the "statutory maximum" sentence in California's determinate sentencing is the *middle* term, rather than the upper term.  <u>Id.</u> at 868. Thus an upper term may only

1  be imposed based on aggravating factors found by the jury or based on the defendant's prior

2  convictions. The court did not address whether this rationale is applicable to a court's imposition of

3  consecutive sentences based on factors not found by a jury.

4          While Petitioner seeks a sentence reduction in light of the decision in <u>Cunningham</u>,

5  Respondent cites <u>Teague v. Lane</u>, 489 U.S. 288 (1989) to argue that a new constitutional rule cannot

6  be applied retroactively to grant federal habeas relief.  (Doc. No. 31, Part 2 at 20.) However, on June

7  9, 2008, after Respondent's Answer was filed to this Court, the Ninth Circuit held that the

8  <u>Cunningham</u> decision "did *not* announce a new rule of constitutional law and *may* be applied

9  retroactively on collateral review." <u>Butler v. Curry</u>, 528 F.3d 624, 639 (9th Cir. 2008)(emphasis

10  added). The Ninth Circuit decided that clearly established law already held that "a sentencing

11  scheme in which the maximum possible sentencing is based on facts found by a judge is not

12  consistent with the Sixth Amendment." <u>Id.</u> at 635 (citing <u>Apprendi v. New Jersey</u>, 530 U.S. 466

13  (2000); <u>Blakely v. Washington</u>, 542 U.S. 296 (2004); <u>United States v. Booker</u>, 543 U.S. 220 (2005)).

14  The application of this general rule to California's sentencing laws did not create new law.  <u>Butler</u>,

15  528 F.3d at 636.

16          In <u>Butler</u>, the Ninth Circuit also reiterated that clearly established law recognizes prior

17  convictions as an exception to this rule.  <u>Id.</u> at 641 (citing <u>Apprendi</u>, 530 U.S. at 490).  The court

18  held that "[t]he fact of a prior conviction is the *only* fact that both increases a penalty beyond the

19  statutory maximum and can be found by a sentencing court." <u>Id.</u> at 645 (quoting <u>United States v.</u>

20  <u>Covian Sandoval</u>, 462 F.3d 1090 (9th Cir. 2006)(emphasis in original)). Accordingly, a judge may

21  impose an upper term based on a defendant's prior convictions, even if the prior convictions were

22  not proven to the jury beyond a reasonable doubt.  <u>Apprendi</u>, 530 U.S. at 490; <u>see</u> <u>also</u>, <u>Butler</u>, 528

23  F.3d at 643-44 (citing <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 247 (1998)).

24          Here, Petitioner's sentence included an upper term sentence and three consecutive life

25  sentences.  (Lodgment 1, Vol. 4 at 925.) In accordance with the Ninth Circuit's recent decision in

26  <u>Butler v. Curry</u>, <u>Cunningham</u> applies retroactively to Petitioner's sentence as clearly established

27  federal law. Therefore, if the trial court sentenced Petitioner to an upper term sentence based on facts

28  not found by a jury beyond a reasonable doubt - other than prior convictions - the trial court violated

Petitioner's Sixth Amendment right to a trial by a jury.

06cv1296

On direct appeal, the Court of Appeal identified several aggravating factors that the trial court relied upon in imposing an upper term sentence.  (Lodgment 9 at 24; see also Lodgment 2, Vol. 23 at 2394.) Under Cunningham, the trial court's reliance on the aggravating factors that Petitioner had engaged in "a high degree of cruelty" and "planning and sophistication," had served a "prior prison sentence," and had exhibited "poor performance on previous probation" would violate Petitioner's Sixth Amendment right to a trial by jury, because these factors were not found by a jury. However, the trial court's reliance that Petitioner's crime included the "use of a handgun," "the taking of items with significant monetary value," and that Petitioner had "numerous prior convictions" did not violate Petitioner's Sixth Amendment right, because these questions had been submitted to and found by the jury.  (Lodgment 6 at 2.)  Additionally, the trial judge retained the right to impose an upper term based on Petitioner's prior convictions, even without the jury's finding. Butler, 528 F.3d at 641. "[I]f at least one of the aggravating factors on which the judge relied in sentencing [a petitioner] was established in a manner consistent with the Sixth Amendment, [a petitioner's] sentence does not violate the Constitution."  Butler, 528 F.3d at 64; see also, Fitzgerald v. Malfi, 2008 WL 2415041(E.D.Cal. 2008). Because the trial judge identified facts found by the jury and Petitioner's prior convictions as aggravating factors, Petitioner's upper term sentence does not present a constitutional violation.

Even if the trial judge's imposition of an upper term was based in part on aggravating factors found by the court rather than the jury, this error is subject to harmless error analysis. Recuenco, 548 U.S. at 222. A petitioner seeking federal habeas relief based on this error must show that the error had a "substantial and injurious effect" on his sentence.  Butler, 528 F.3d at 648 (citing Hoffman v. Arave, 236 F.3d 523, 540 (9th Cir. 2001). "[T]he relevant question is not what the trial court *would* have done, but what it legally *could* have done."  Id. at 648 (emphasis in original). Therefore, Petitioner is only entitled to relief for this error if the trial court *could not* have imposed an upper term sentence based on the standard for imposing an upper term sentence. As previously discussed, the trial judge and the California Court of Appeal identified several aggravating factors found by the jury, as well as Petitioner's prior convictions, as a basis for the upper term sentence. Under Cunningham, these factors are constitutional reasons for imposing an upper term sentence. Thus,

even if the trial judge erred in imposing an upper term based in part on factors not found by a jury, there still existed a constitutional basis for the court to impose such a sentence. Any error would therefore be harmless and Petitioner is not entitled to relief from this Court for his upper term sentence.

With respect to the trial court's imposition of consecutive sentences, "[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994); see also, Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States," Estelle, 502 U.S. at 68. Federal habeas courts lack jurisdiction to review state court applications of state procedural rules. See Estelle, 502 U.S. at 67-68 (explaining that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("Federal habeas corpus relief does not lie for errors of state law."); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) (holding that "alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings), cert. denied, 522 U.S. 881 (1997). The trial court's imposition of consecutive sentences, and the California Court of Appeal's affirmation of the sentences, are a matter of California criminal procedure law. This Court does not have jurisdiction to review the state court application of this state law.

**2. Violation of California Penal Code § 12022.53(F)**

Petitioner asserts that the trial court violated California Penal Code § 12022.53(F) when it sentenced him to both an upper-term sentence and consecutive sentences based on the same aggravating factor.  (Petition at 9.)

As previously discussed, federal habeas courts lack jurisdiction to review state court applications of state procedural rules. See Estelle, 502 U.S. at 67-68. In the instant case, Petitioner's claim that the trial court incorrectly applied California sentencing law fails to allege a federal claim for relief. This claim only relates to the trial court's application of California Penal Code § 12022.53(F). This Court does not have jurisdiction to review the state court determination of this

state law.

## IV. CONCLUSION

Based upon the above discussion, this Court recommends that the Petition be DENIED. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Court Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **August 22, 2008**. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed **no later than ten days upon receipt of the objections**. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  July 21, 2008

_____
LOUISA S PORTER
United States Magistrate Judge

- 27 -

06cv1296