FILED

2008 OCT -2  PH 3: 48

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER STEVEN BUTLER,

Petitioner,

vs.

L.E. SCRIBNER, Warden, et al.,

Respondent.

CASE NO. 06-CV-1296-W (POR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 (Doc. No. 25)**

Petitioner Christopher Steven Butler ("Petitioner"), a state prisoner proceeding *pro se*, has filed a federal Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 25.) The Court takes the matter under submission and without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). For the following reasons, the Court **ADOPTS** the Magistrate's Report and Recommendation ("Report"), herein incorporated by reference, **OVERRULES** Petitioner's objections, and **DENIES** the petition in its entirety.

//

## I.   BACKGROUND

Petitioner was tried in San Diego Superior Court on eight charges stemming from his involvement in a bank robbery. (*Report* at 2.)  At trial, the prosecution and the defense presented two different versions of the facts surrounding the bank robbery. (*Report* at 2.)  The prosecution argued that Petitioner kidnapped the bank manager, her roommate, and her daughter and forced the bank manager to take $360,000 from the vault. (*Report* at 3.)  The prosecution's evidence consisted of physical evidence found in Petitioner's car and the kidnapping victims' testimony. (*Report* at 3-4.)  The defense, on the other hand, claimed that the bank manager had planned the robbery herself and asked Petitioner to participate.  (*Report* at 4.)   The defense further claimed that Petitioner and the bank manager had ransacked her house to make it appear as if there had been a break-in and kidnapping. (*Report* at 4.)   The defense provided only Petitioner's own testimony to support his claims.  (*Report* at 4.)

On July 1, 2002 a jury convicted Petitioner of two counts of kidnapping for ransom, conspiracy to kidnap the bank manager for the purpose of robbery, and robbery.  (Doc. No. 1.)   The jury deadlocked on the remaining four counts of kidnapping the bank manager to commit robbery, two counts of robbery of the bank manager, and residential burglary. (*Report* at 4.)  The trial court sentenced Petitioner to three consecutive life terms plus sixty-four years.  (*Report* at 5.)

Following his conviction and sentence, Petitioner directly appealed to the California Court of Appeal on three grounds: (1) the trial court erred in failing to instruct the jurors on the required specific intent element of conspiracy to commit kidnapping for robbery; (2) the trial court abused its discretion when it required Petitioner to wear a stun belt in court; and (3) the trial court violated Petitioner's Sixth Amendment right to a jury trial when it imposed an upper term sentence for his robbery conviction based on aggravating factors not found by the jury. (*Report* at 5.)  The Court of Appeal reversed Petitioner's conviction for conspiracy to commit kidnapping based on the trial court's failure to give proper jury instructions. (*Report* at 5.)  The court also

06cv1296

1  granted Petitioner's claim that he was sentenced in violation of his Sixth Amendment
2  right in light of the United States Supreme Court's decision in <u>Blakely v. Washington</u>,
3  542 U.S. 296 (2004) (holding that any facts used to increase a defendant's sentence
4  must be found by the jury beyond a reasonable doubt). (*Report* at 5.)  However, the
5  court rejected Petitioner's claim that the trial court denied him a fair trial by requiring
6  him to wear a stun belt. (*Report* at 5.)

7          Petitioner then filed a petition for review before the California Supreme Court
8  on the stun belt issue. (*Report* at 6.)  The government also filed a petition for review
9  as to whether <u>Blakely</u> applied to the issuance of upper-term sentences under California's
10  sentencing scheme. (*Report* at 6.)  The California Supreme Court denied Petitioner's
11  motion for review, but granted and deferred the government's petition pending the
12  disposition of two related cases involving similar <u>Blakely</u> issues. (*Report* at 6.)

13          On June 20, 2005 the California Supreme Court ruled that the state's sentencing
14  laws did not violate the Sixth Amendment. <u>People v. Black</u>, 35 Cal. 4th 1238 (2005),
15  <u>vacated</u>, 127 S.Ct. 1210 (2007). (*Report* at 6.)  On September 7, 2005 the California
16  Supreme Court remanded Petitioner's case to the Court of Appeal with directions to
17  vacate its decision and reconsider Petitioner's sentence in light of the <u>Black</u> decision.
18  (*Report* at 6.)  On remand, the Court of Appeal found that Petitioner's sentence did not
19  violate his Sixth Amendment right. (*Report* at 6.)  The Court of Appeal then remanded
20  the matter to the trial court for resentencing based on its reversal of the conspiracy to
21  commit kidnapping charge. (*Report* at 6.)  Petitioner filed a petition for review of the
22  Court of Appeal's decision to the California Supreme Court, which was denied without
23  comment. (*Report* at 6.)  On remand, the Superior Court reversed one of Petitioner's
24  life sentences for the conspiracy to commit kidnapping charge but confirmed the
25  sentences for the remaining convictions.   (*Report* at 6.)

26          On June 29, 2006 Petitioner filed a petition for writ of habeas corpus in San
27  Diego Superior Court challenging the procedure by which he was resentenced. (*Report*
28  at 6–7.)  Petitioner claimed ineffective assistance of counsel and that the trial court

1   violated his right to receive notice of and be present at his resentencing hearing.

2   (*Report* at 7.) Petitioner also claimed that the court had failed to inform him of his right

3   to appeal his sentence. (*Report* at 7.) On September 1, 2006 the Superior Court

4   rejected Petitioner's claims and denied his petition. (*Report* at 7.) Petitioner filed a

5   second petition for writ of habeas at the California Court of Appeal alleging the same

6   claims, which was denied on the merits. (*Report* at 7-8.) On February 9, 2007

7   Petitioner filed a third petition for writ of habeas corpus at the California Supreme

8   Court, alleging the same claims and also that his due process rights were violated when

9   the trial court conducted the resentencing hearing in his absence. (*Report* at 8.) On

10  July 11, 2007 the California Supreme Court denied the petition without comment.

11  (*Report* at 8.)

12         On June 20, 2006 Petitioner filed a federal petition for writ of habeas corpus.

13  (*Report* at 8.) On September 14, 2007 Petitioner filed a First Amended Petition (the

14  "Petition"). (*Report* at 8.) On January 25, 2008 Respondent filed an answer to the

15  Petition, alleging that Petitioner failed to state that the state court's resolution of his

16  claims was unreasonable under AEDPA, that the state courts reasonably concluded

17  that Petitioner was not denied his right to effective counsel or due process, and that the

18  state courts reasonably concluded that Petitioner's sentencing was proper in light of

19  <u>Blakely</u> and <u>Cunningham</u>. (*Report* at 9.) On March 10, 2008 Petitioner filed a traverse

20  to Respondent's answer. (*Report* at 10.) On July 21, 2008 Magistrate Judge Louisa

21  Porter issued her Report recommending that the Petition be denied.

22

23  II.   LEGAL STANDARD

24         A federal court may grant a habeas petition if it shows the applicant is in custody

25  "in violation of the Constitution or other laws or treaties of the United States." 28

26  U.S.C. § 2254(a). State interpretation of state laws and rules cannot serve as the basis

27  for a federal habeas petition, as no federal or constitutional question would be

28  implicated. <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991). Habeas petitions are governed

1   by the provisions of the 1996 Antiterrorism and Effective Death Penalty Act
2   ("AEDPA"). Pursuant to AEDPA, a federal court may grant habeas corpus relief from
3   a state court judgment only if the adjudication was (1) contrary to, or involved an
4   unreasonable application of, clearly established federal law, or (2) was based on an
5   unreasonable determination of the facts in light of the evidence presented in the state
6   court proceedings. 28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 7-8 (2002).

7         A state-court decision is "contrary to clearly established federal law" if it (1)
8   applies a rule that contradicts the governing law set forth in Supreme Court cases, or
9   (2) confronts a set of facts that are materially indistinguishable from a decision of the
10  Supreme Court and nevertheless arrives at the opposite result. Williams v. Taylor, 529
11  U.S. 362, 405 (2000).   A state-court decision is an unreasonable application of the
12  facts "if the state court identifies the correct governing legal principle from [the
13  Supreme Court's] decisions but unreasonably applies that principle to the facts of the
14  prisoner's case. Id. at 413.  The federal habeas court is not called to decide whether it
15  agrees with the state court's decision or whether it would have reached the same
16  conclusion; rather, the Court inquires only whether the state court's decision was
17  objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

18
19  **III.   DISCUSSION**
20        Petitioner challenges his Superior Court conviction and sentence pursuant to 28
21  U.S.C. § 2254 on four grounds: (1) ineffective assistance of counsel; (2) violation of his
22  right to be present at his resentencing hearing; (3) violation of his right to a fair trial
23  caused by the court requiring him to wear a stun belt and allowing his attorney to meet
24  with the prosecutor outside of Petitioner's presence; and (4) that his sentence is
25  contrary to the United States Supreme Court's Cunningham v. California opinion.
26  (*Report* at 5.) Respondent argues that Petitioner has failed to state that the state court's
27  resolution of his claims was unreasonable under the AEDPA.   (*Report* at 9.)
28  Respondent also contends that the state courts reasonably concluded that Petitioner's

1  sentencing was proper, and that Petitioner was not denied his right to effective counsel
2  or due process.  (*Report* at 9.)  For the reasons detailed below, the Court agrees with
3  Respondent.

4

5      A.    <u>Ineffective Assistance of Counsel</u>

6          Petitioner claims that his Fifth, Sixth, and Fourteenth Amendment rights were
7  violated when his trial counsel waived Petitioner's right to be present at his
8  resentencing hearing without his consent.  The Report found that counsel's waiver was
9  within the wide range of professional competence, and that Petitioner's presence would
10  have had no effect on the outcome of the hearing.  Petitioner objects that had he been
11  at the resentencing, he would have requested the remittitur of jurisdiction which was
12  not issued until after the hearing.  Plaintiff claims that because the remittitur had not
13  yet been issued, the trial court did not have the requisite jurisdiction to resentence him.
14          In its opinion denying Petitioner's state habeas petition, the Court of Appeal
15  found that although Petitioner was absent from the hearing, there was no evidence to
16  support his claim that this was due to a waiver by counsel.  (*Report* at 11.)  In his
17  Petition to this Court, however, Petitioner includes a letter drafted by the presiding
18  Superior Court judge informing Petitioner of counsel's waiver of his presence at the
19  resentencing hearing.  Because of this evidentiary issue, the Court of Appeal did not
20  address the merits of Petitioner's ineffective assistance of counsel claim.  Therefore, this
21  Court will address Petitioner's claim in the first instance and determine whether
22  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), entitles him to relief.
23          To establish a claim of ineffective assistance of counsel, a party must prove that
24  "(1) his counsel's performance was deficient and (2) the deficient performance
25  prejudiced the defense."  <u>Jones v. Wood</u>, 114 F.3d 1002, 1010 (9th Cir. 1997) (citing
26  <u>Strickland v. Washington</u>, 466 U.S. at 687).  A counsel's performance is deficient if it
27  falls below an objective standard of reasonableness under the circumstances, to be
28  determined by prevailing professional norms.  <u>Strickland</u>, 466 U.S. at 687.  Competence

06cv1296

1 is presumed, and the petitioner must rebut this presumption by showing that counsel

2 was objectively unreasonable. <u>Belmontes v. Ayers</u>, 529 F.3d 834, 856 (9th Cir. 2008).

3      A petitioner must also show that counsel's performance was so deficient that it

4 prejudiced his defense. <u>Strickland</u>, 466 U.S. at 694. To establish prejudice, the

5 petitioner must demonstrate that there is "a reasonable probability that, but for

6 counsel's unprofessional errors," the proceeding would have resulted differently.

7 <u>Belmontes</u>, 529 F.3d at 863 (quoting <u>Strickland</u>, 466 U.S. at 694.). A court may reject

8 a petitioner's claim upon finding that either counsel's behavior was reasonable or that

9 the error was not prejudicial. <u>Strickland</u>, 466 U.S. at 694.

10      Petitioner, while clearly alleging that his trial counsel failed to inform him of his

11 resentencing hearing, does not specifically allege how his counsel's representation in

12 this regard was unreasonable, nor how it prejudiced his defense. Furthermore, even

13 assuming counsel's conduct was outside the range of reasonable professional conduct,

14 Petitioner suffered no harm by it. At the resentencing hearing, the judge only had

15 discretion to slightly modify Petitioner's sentence. Petitioner's presence would have had

16 no effect on the outcome and he was not prejudiced due to the trial court's limited

17 jurisdiction to modify the sentence. Therefore, Petitioner's claim of ineffective

18 assistance of counsel is **DENIED**.

19

20     **B.**    **<u>Violation of Right to be Present at Resentencing Hearing</u>**

21      Petitioner claims the trial court violated his right to due process by conducting

22 the resentencing hearing ou tside Petitioner's presence. The Report found that

23 Petitioner's presence was not constitutionally required at the resentencing hearing.

24 Petitioner objected by reasserting his claim that his presence would have prevented the

25 court from resentencing him because he would have pointed that the court lacked

26 jurisdiction.

27      Clearly established United States Supreme Court precedent provides that a

28 defendant has the right to be present at any critical stage of a criminal proceeding if his

1  presence would contribute to the fairness of the procedure. <u>Campbell v. Rice</u>, 408 F.3d

2  1166, 1171 (9th Cir. 2005) (citing <u>Kentucky v. Stincer</u>, 482 U.S. 730, 745 (1987)).

3  However, the privilege of presence is not required when the "presence would be useless,

4  or the benefit but a shadow." <u>Stincer</u>, 482 U.S. at 745.  A defendant's right to be

5  present is not absolute, but instead only required to the extent that fairness and justice

6  would be thwarted by his absence. <u>United States v. Gagnon</u>, 470 U.S. 522, 526 (1985).

7        Petitioner's presence at the resentencing hearing was not constitutionally

8  required because his appearance would not have affected the outcome of the

9  proceeding.  The trial court only had jurisdiction to modify Petitioner's sentence based

10  on the Court of Appeal's instructions.  The court did modify the sentence by reversing

11  the conviction for conspiracy to kidnap for the purpose of robbery and confirmed his

12  remaining sentences.  Not only did this not harm Petitioner, his presence would not

13  have affected the outcome of the hearing in any way since the trial court was merely

14  following the instructions of the remanding court.

15        Petitioner's objections state that the reason his presence would have had an

16  effect on the outcome of the hearing is because he would have pointed out the lack of

17  jurisdiction to resentence him.   However, this argument asserts a violation of

18  California's criminal procedure law.  A federal court conducting habeas review is

19  limited to deciding whether the constitution, a federal law, or a federal treaty was

20  violated. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991).  Accordingly, this Court lacks

21  jurisdiction to review the state court's application of its criminal procedure laws.

22        When the Court of Appeal considered Petitioner's state habeas petition, it found

23  that Petitioner's presence would have added nothing to the outcome of the sentencing

24  hearing.  Again, this Court does not decide whether it agrees with the state court's

25  decision, only whether that decision was "objectively unreasonable." <u>Yarborough</u>, 540

26  U.S. at 4.  Based on the record, the Court finds Petitioner has failed to demonstrate

27  that the state court's determination was objectively unreasonable.   Therefore,

28  Petitioner's due process claim is **DENIED**.

C.     <u>Violation of Right to Fair Trial</u>

Petitioner asserts he was denied the right to a fair trial in two ways: (1) that the trial court abused its discretion when it allowed the bailiff to authorize the use of a stun belt without a court order; and (2) that the trial court denied him effective assistance of counsel by allowing counsel for the defense and the prosecution to meet outside his presence to discuss physical restraints.[1] The Report found that Petitioner failed to raise a federal claim regarding counsel's meeting in chambers. The Report also concluded that the Court of Appeal's rejection of Petitioner's claim regarding the stun belt was not contrary to clearly established federal law. Petitioner objected, claiming that he indeed raised a federal question because his claim relates to a "close case" and a violation of the Federal Rules of Criminal Procedure.

On November 4, 2005 the California Court of Appeal issued the last reasoned opinion regarding this claim. The Court of Appeal first rejected Petitioner's claim on appeal due to his failure to raise it as an objection at trial, stating that he had waived his right to object to the safety restraint. Because the Court of Appeal relied on this waiver argument, it did not apply the relevant Supreme Court precedent on safety restraints. This Court will therefore apply the standards set forth by the Supreme Court and clarified by the Ninth Circuit for when a trial court is justified in imposing a stun belt on a defendant.

1.     Petitioner's pre-trial behavior and the trial court's actions

Prior to his trial, Petitioner attempted to escape from jail. (*Report* at 14.) Also before the trial, the judge discussed with the prosecution, defense counsel, and the

---

[1] Petitioner also claims that the trial court violated Rule 43(a) of the Federal Rules of Criminal Procedure by allowing counsel and the district attorney to confer in chambers outside of Petitioner's presence. However, Petitioner's trial occurred in state court. Therefore, the Federal Rules of Criminal Procedure are not applicable. See Fed. R. Crim. P. 1(a)(1) ("These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States."). Petitioner's claim is therefore **DENIED**.

1  bailiff various security concerns she had because of the number of defendants that
2  would be on trial. (*Report* at 14.)  In chambers, the judge extensively discussed the
3  available means of restraint and their drawbacks. (*Report* at 14.)  The judge considered
4  adding more bailiffs and having the defendants wear leg chains, but felt that the
5  additional visible security might cause concern or prejudice in jurors. (*Report* at 14–15.)
6  The judge had the prosecution and defense consider and discuss the possible
7  alternatives before finally deciding on a stun belt, which could be hidden underneath
8  Petitioner's clothing. (*Report* at 15.)

9      Prior to donning the belt, Petitioner signed a release form that acknowledged
10  various behaviors that may lead to the belt's activation (such as sudden movements,
11  hostile or rebellious conduct, etc.) and the potential consequences of activating the belt
12  (such as immobilization or self-defecation) . (*Report* at 15.)  Petitioner was required to
13  wear the stun belt throughout his trial. (*Report* at 15.)

14      Although the pre-trial discussion as to the type of restraint was conducted off the
15  record, at Petitioner's motion for a new trial the trial judge described the extensive
16  discussions that had taken place regarding safety precautions. (*Report* at 15.)  The judge
17  referred to several justifications for safety restraints, particularly Petitioner's prior escape
18  attempt, the large number of defendants, and the severity of the sentences faced by the
19  defendants. (*Report* at 15.)  The judge again justified her choice of a stun belt based on
20  its concealment from the jury and the smaller risk of prejudice to Petitioner compared
21  with traditional shackling or restraints.  (*Report* at 15.)  Furthermore, the judge also
22  noted that neither Petitioner nor his counsel had voiced any objections to the use of the
23  stun belt at the trial, even though the she had given them the opportunity to do so.
24  (*Report* at 15.)

25

26          **2.    Use of physical restraints was justified and reasonable**

27      Petitioner claims that he was denied his right to a fair trial when he was required
28  to wear a stun belt under his clothing during the duration of his criminal trial. Clearly

-10-

1    established federal law gives a trial court wide discretion to impose physical restraints
2    on a criminal defendant, but physical confinement during trial does impose certain
3    constitutional concerns. <u>Morgan v. Bunnell</u>, 24 F.3d 49, 51 (9th Cir. 1994); <u>see also</u>
4    <u>Gonzalez v. Pliler</u>, 341 F.3d 897, 900 (9th Cir. 2003). In order to avoid these
5    constitutional implications, the court must first find that compelling circumstances
6    justify the use of physical restraints. <u>United States v. Fernandez</u>, 388 F.3d 1199, 1245
7    (9th Cir. 2004); <u>see also</u> <u>Gonzalez</u>, 341 F.3d at 900. Restraints may only be used when
8    justified by an essential state interest. <u>Larson v. Palmateer</u>, 515 F.3d 1057, 1063 (9th
9    Cir. 2008). To determine if restraints are justified, a trial judge may consider courtroom
10   safety concerns, threat of a defendant's escape (and the safety of the general public),
11   and a defendant's propensity for violence. <u>Morgan</u>, 24 F.3d at 51.

12       The court must also consider less restrictive alternatives to ensure that restraints
13   are used as a last resort. <u>Fernandez</u>, 388 F.3d at 1245; <u>see also</u> <u>Gonzalez</u>, 341 F.3d at
14   900. Before imposing physical restraints, the trial court must weigh less restrictive
15   alternatives in order to minimize the risk of prejudicing the jury, minimize impairment
16   of the defendant's mental facilities and communication abilities, and minimize
17   detraction from the decorum of the proceedings. <u>Morgan</u>, 24 F.3d at 51. Physical
18   restraints may only be used as a last resort because of these possible prejudices. <u>Id.</u>
19   However, the Ninth Circuit considers stun belts to be less restrictive than traditional
20   shackles or other visible restraints because they can be concealed under clothing.
21   <u>United States v. Collins</u>, 109 F.3d 1413, 1418 (9th Cir. 1997).

22       Here, when the trial judge conferred with counsel regarding the need for
23   restraints in this case she referred to multiple legitimate justifications for the use of a
24   stun belt on Petitioner. For example, the judge referred to Petitioner's prior escape
25   attempt, the number of defendants being tried together, and the severe and violent
26   nature of the charges against Petitioner. Under current Ninth Circuit law, Petitioner's
27   attempted escape alone justifies the use of physical restraints. <u>See</u> <u>Morgan</u>, 24 F.3d at
28   51 (holding that restraints are justified by the dangerous nature of an escape attempt).

1  Given these relevant facts, the trial judge had sufficiently compelling reasons to justify
2  the imposition of physical restraints.

3      Furthermore, prior to placing Petitioner in restraints, the trial judge considered
4  the benefits and disadvantages of various safety measures, including requiring the
5  defendants to wear leg chains, increasing the number of deputies, and stun belts. The
6  judge determined that the stun belt was the least restrictive measure because juror
7  prejudice could result from an increased bailiff presence or placing the defendants in
8  visible chains.

9      The last reasoned decision on this issue was based on a theory that Petitioner had
10 waived his right to object to the physical restraints by not opposing their imposition at
11 trial. Regardless, the Court finds that the stun belt was used in accordance with federal
12 law. Therefore, Petitioner's fair trial claim regarding the stun belt is **DENIED**.

13

14      **3.    Absence from pre-trial conference did not violate due process**
15      In Petitioner's second claim arising from the alleged denial of the right to a fair
16 trial, he asserts that he was denied effective assistance of counsel and the right to be
17 present in chambers when he was excluded from the conference between the attorneys
18 and the judge regarding the imposition of physical restraints.

19      As the Court previously discussed, a defendant has the right to be present at any
20 critical stage of a criminal proceeding if his presence would contribute to the fairness
21 of the procedure. <u>Campbell</u>, 408 F.3d at 1171 (citing <u>Stincer</u>, 482 U.S. at 745).
22 However, a defendant's right to be present is not absolute, but instead only required to
23 the extent that fairness and justice would be thwarted by his absence. <u>Gagnon</u>, 470
24 U.S. at 526 (1985).

25      Petitioner's absence from the in-chambers discussions regarding safety
26 considerations could not have had an effect on the fairness of the proceeding. Prior to
27 trial, the judge decided that some safety precautions would be necessary and discussed
28 this plan in open court. The judge gave Petitioner an opportunity to voice his concerns

1   about physical restraints or juror prejudice, but he did not.  Furthermore, even without

2   Petitioner's presence, the judge considered the possible prejudice that might be caused

3   by the safety restraints and chose a concealed restraint to minimize jury bias.  Fairness

4   and justice were not thwarted by Petitioner's absence.  Because the Court finds that use

5   of the stun belt was fair, Petitioner could not have made it any more fair by his presence

6   at the hearing.  Therefore, Petitioner's absence from the conference was not a due

7   process violation and his claim on this ground is **DENIED**.

8

9       **D.    Improper Sentence**

10      Petitioner's remaining claim, based on the recent United States Supreme Court

11  decision in <u>Cunningham v. California</u>, 127 S.Ct. 856 (2007), is that the upper term

12  sentence and consecutive sentences were unconstitutionally imposed.[2]  The Report

13  found that while <u>Cunningham</u> applied to Petitioner's case, the aggravating factors found

14  by the jury were constitutionally sufficient to justify imposing an upper term sentence.

15  Petitioner objects, arguing that because of the closeness of his case and the absence of

16  sufficient aggravating factors, the Court should find a constitutional error.  Because the

17  last reasoned state court opinion on this issue applied law which has since been

18  overturned, the Court will analyze Petitioner's claim under the law as it now stands.

19

20      **1.    Upper term sentence did not violate the Sixth Amendment**

21      On direct appeal of Petitioner's conviction, the California Court of Appeal relied

22  on the California Supreme Court's decision in <u>People v. Black</u>, which held that "judicial

23  fact finding that occurs when a court exercises discretion to impose an upper term... or

24  consecutive terms under California law does not implicate a defendant's Sixth

25  _____

26      [2]Petitioner also claims that the trial court, in imposing a high term-sentence and
    consecutive sentences based on the same aggravating factor, violated California Penal

27  Code Section 12022.53(F).  Because this claim is predicated on a violation of state
    procedural rules at the state trial court level, it cannot be addressed in a federal habeas.

28  <u>See</u> <u>Estelle</u>, 502 U.S. 62 (holding that a federal habeas court lacks jurisdiction to review
    state court applications of state procedural rules).  Therefore, the Report's
    recommendation regarding this claim is adopted, and the claim is **DENIED**.

06cv1296

1   Amendment right to a jury." <u>Black</u>, 35 Cal. 4th 1238, 1244 (2005).  The Court of

2   Appeal referenced the aggravating factors that the trial court had relied on in imposing

3   an upper term and consecutive sentences, which included "a high degree of cruelty, the

4   use of a handgun, the taking of items with significant monetary value, the degree of

5   planning and sophistication, numerous prior convictions, a prior prison sentence and

6   poor performance on previous probation." (*Report* at 23.)  Under <u>Black</u>, an upper term

7   was the "statutory maximum" allowed under California's determinative sentencing law.

8   (*Report* at 23.)  The court also found, under <u>Black</u>, that a court may impose consecutive

9   sentences without a factual finding by a jury. (*Report* at 23.)

10       Abrogating <u>Black</u>, the United States Supreme Court recently declared that

11   California's determinative sentencing laws violated a defendant's Sixth Amendment

12   right to a trial by a jury to the extent that they permit a judge to impose an upper term

13   sentence based on facts not found by a jury beyond a reasonable doubt or admitted to

14   by a defendant. <u>Cunningham v. California</u>, 127 S.Ct. 856, 868 (2007).  The court

15   found that, except for a prior conviction, any fact that increases the penalty for the

16   crime beyond the proscribed statutory maximum must be proved beyond a reasonable

17   doubt to a jury. <u>Id.</u> at 864.  The court in <u>Cunningham</u> also held, contrary to the

18   California Supreme Court's interpretation in <u>Black</u>, that the "statutory maximum"

19   sentence in California is the middle term, rather than the upper term. <u>Id.</u> at 868.

20   Therefore, under <u>Cunningham</u>, the statutory maximum may only be imposed based on

21   aggravating factors found by the jury or based on the defendant's prior convictions.

22       On June 9, 2008 the Ninth Circuit held that the <u>Cunningham</u> decision did not

23   announce a "new rule" under <u>Teague v. Lane</u>, 489 U.S. 288 (1989), which held that

24   habeas courts cannot grant habeas relief by retroactively applying newly announced

25   constitutional rules. <u>Butler v. Curry</u>, 528 F.3d 624, 639 (9th Cir. 2008).  Instead, the

26   <u>Butler</u> court found that clearly established law already held that "a sentencing scheme

27   in which the maximum possible sentencing is based on facts found by a judge is not

28   consistent with the Sixth Amendment." <u>Id.</u> at 635 (citing <u>Apprendi v. New Jersey</u>, 530

-14-

1   U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004); United States v. Booker,

2   543 U.S. 220 (2005).  The application of this general rule to California's sentencing

3   rules did not create new law.  Id. at 636.  Cunningham, therefore, is applicable to

4   Petitioner's case.

5        At Petitioner's trial, the judge relied on seven factors in imposing an upper term

6   sentence.  Three of the factors, specifically the "high degree of cruelty," "planning and

7   sophistication," and Petitioner's "poor performance on previous probation" were not

8   submitted to and found by a jury.  Reliance on these factors would violate Petitioner's

9   Sixth Amendment right to jury trial if they alone served as aggravating factors.

10  However, the trial judge also relied on Petitioner's "use of a handgun," "taking of items

11  with significant monetary value," and Petitioner's numerous prior convictions.  These

12  questions were submitted to and found by the jury and can, under Cunningham, justify

13  an upper-term sentence.

14       Furthermore, the trial judge also had the independent ability to impose an upper

15  term sentence on Petitioner based on his prior convictions.  Cunningham at 864.

16  Because only one of the aggravating factors on which the judge relied in sentencing has

17  to be consistent with the Sixth Amendment, Petitioner's upper term sentence is more

18  than justified by the three factors properly considered by the trial judge (use of a gun,

19  "taking of items with significant monetary value," and Petitioner's prior convictions).

20  See Butler, 528 F.3d at 64.  The upper terms sentence is therefore constitutional, even

21  when considered under Cunningham and Butler, and accordingly Petitioner's claim

22  regarding his upper term sentence must be **DENIED**.

23

24       **2.    Consecutive sentences may not be reviewed by habeas court**

25       Petitioner also claims that the trial court erred when it imposed consecutive

26  sentences based on the aggravating factors not proved to the jury.  However, the

27  decision whether to impose sentences concurrently or consecutively is a matter of state

28  criminal procedure and may not be reviewed in by a federal habeas court.  Cacoperdo

1   v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).  Federal habeas review is limited to

2   deciding whether a conviction violated the Constitution, laws or treaties of the United

3   States.  Estelle, 502 U.S. at 68.  Because the trial court's imposition of consecutive

4   sentences are a matter of California criminal procedure law and may not be reviewed

5   at a federal habeas proceeding, Petitioner's claim regarding consecutive sentences is

6   DENIED.

7

8   IV.   CONCLUSION

9        Petitioner's claims lack merit.  Petitioner's failure to show how his presence at the

10  resentencing hearing would have changed the outcome results in the denial of his due

11  process and ineffective assistance of counsel claims.  Petitioner was also not denied due

12  process when the court required him to wear a stun belt during his trial.  Finally,

13  Petitioner was properly sentenced under Cunningham, and his consecutive sentences

14  may not be reviewed by this court.  In light of the foregoing, the Court DENIES

15  Petitioner's petition for a writ of habeas corpus in its entirety.  The Clerk of the Court

16  shall close the district court file.

17

18  IT IS SO ORDERED.

19

20  DATED: October 2, 2008

21                                              HON. THOMAS J. WHELAN
22                                              United States District Court
23                                              Southern District of California

24

25

26

27

28

-16-

06cv1296